UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK BURKET, LINDA BURKET,
NORMAN EANSOR, SUSAN I.
LINDQUIST AS TRUSTEE OF THE
SUSAN I. LINDQUIST LIVING TRUST,
JOHN MCLAUGHLIN LLC, JOHN                     Case No. 05-72110
MCLAUGHLIN, MCLAUGHLIN FORD,
INC., MCLAUGHLIN ENTERPRISES,                 Honorable Patrick J. Duggan
INC., JAYMAC, INC., C.B.S. AGENCY,
INC., BRITNEY HOLDINGS, LTD.,

             Plaintiffs,

v.

HYMAN LIPPITT, P.C., TERRY GIVENS
and JOHN DOES #1 THROUGH #50,

             Defendants.
_____/

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS OR FOR SUMMARY JUDGMENT AND DENYING DEFENDANT
GIVENS'S MOTION TO STRIKE**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 29, 2005.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
              U.S. DISTRICT COURT JUDGE

This matter is before the Court in three separate, but related Complaints: *Burket, et al.*

*v. Hyman Lippitt, et al.*, Case No. 05-72110 (filed on May 27, 2005); *Adams, et al. v. Hyman*

*Lippitt, et al.*, Case No. 05-72171 (filed on June 2, 2005); and *Cliff, et al. v. Hyman Lippitt*

*P.C., et al.*, Case No. 05-72221 (filed on June 6, 2005).[1]  All three Complaints allege

Exchange Act and state law violations.  On July 18, 2005, Defendants Hyman Lippitt, P.C.

and John Does #1 through #20[2] filed a Motion to Dismiss or, alternatively, for Summary

Judgment in all three cases.  On August 2, 2005, Defendant Terry Givens joined in

Defendants' Motion to Dismiss or alternatively, for Summary Judgment, and filed a Motion

to Strike Certain Prejudicial, Impertinent, or Scandalous Matter from the Complaints.  The

Court held a hearing on these Motions on October 5, 2005.

## I.    Background

The following background is taken directly from the Plaintiffs' Complaints, accepting

all of the factual allegations in the Complaints as true, as this Court must in a 12(b)(6)

motion.

Hyman Lippitt, P.C. is a law firm located in Birmingham, Michigan, that specializes

in business litigation and transactions, including offshore finance.  In 1999, Keith Mohn, an

investment advisor and Hyman Lippitt client, began to refer clients to Terry Givens, Esq.,

who was the head of Hyman Lippitt's Offshore Practice Group.  (*Adams* Compl. ¶70).

Givens and the Hyman Lippitt Offshore Practice Group "advised the clients to enter [into]

various transactions, many of which were based on insurance programs devised by Givens

and Mohn."  (*Id.*).

_____

[1] Because of the similar language and allegations contained in the Complaints, throughout this Opinion and Order, the Court will only cite to the *Adams* Complaint, unless otherwise noted.

[2] Plaintiffs allege that "John Does #1 through #20 are shareholders, partners, members and/or employees of Hyman Lippitt."  (*Adams* Compl. ¶66).

In April 2000, Givens met with Mohn, J. Patrick Kisor, and Kisor's associate, Dennis Drabeck. During this meeting, Givens told Kisor and Mohn that Hyman Lippitt could create an investment vehicle for clients of Hyman Lippitt's Offshore Practice Group for a fee of $125,000. (*Id.* at ¶71). Kisor paid this fee. (*Id.*).

Givens established GNT, a Cook Islands trust company. (*Id.* at ¶72). GNT was then used to form Agave, Ltd., which operated under the laws of Cook Islands. (*Id.* at ¶73). Givens asked Mohn to serve as the principal of Agave. (*Id.*). On September 13, 2000, Mohn executed a Services Agreement. (Ex. C to *Adams* Compl.). In accordance with the Cook Islands procedure and practice, GNT could only accept instructions from Mohn, Agave's principal. (*See Adams* Compl. ¶73).

Givens later asked Pippa Diamond, also known as Pippa Kerry, to serve as the principal of Agave. (*Id.* at ¶74). Givens instructed Diamond to execute a second Services Agreement, which designated Givens and Kisor as the persons from whom GNT was to take instruction regarding Agave's operations. (*Id.*; Ex. B to *Adams* Compl.). This agreement was signed after the first Services Agreement, "but was backdated to July 27, 2000, to indicate that it was intended to supercede" the first Services Agreement. (*Adams* Compl. at ¶74; *see also* Ex. D to *Adams* Compl.).

Givens structured Agave with three classes of shareholders: A, B, and C. (*Adams* Compl. at ¶76). Diamond was Agave's sole Class A Shareholder, with whom all control was vested. (*Id.*). Class B shares were sold to investors who invested up to $500,000. (*Id.*). Class C shares were sold to investors who invested $500,000 and above. (*Id.*). Givens or other Hyman Lippitt attorneys prepared the documents offering Class B and C shares of

3

Agave.  (*Id.* at ¶78).

The only information investors were given about Agave was contained in a brochure. (*Id.* at ¶79).  The brochure stated that Agave "has at least doubled the performance of the S & P 500 for the last 5 years."  (Ex. G to *Adams* Compl.).  The investors were not told that Givens and Kisor could instruct GNT to act on Agave's behalf.  (*Adams* Compl. at ¶79).  The investors were not told about the risks inherent in investing in an entity organized under the laws of the Cook Islands.  (*Id.* at ¶80).

Moreover, the investors were not given any information on Kisor's background or experience.  (*Id.*).  Nor were the investors told that Kisor managed Agave funds at EDF Mann by a general Power of Attorney,[3] which allowed him to embezzle Agave funds and make unauthorized investments.  (*Id.* at ¶¶79, 84).

Mohn recommended that a number of the Plaintiffs invest in Agave shares.  In addition, Mohn referred Kisor and Agave to other investment advisors who recommended the purchase of Agave shares to their clients.  (*Id.* at ¶87).[4]  Thus, Plaintiffs contend that Mohn either directly or indirectly recommended the purchase of Agave shares to all Plaintiffs. (*Id.*).

---

[3] Givens was supposed to review the form Power of Attorney and indicate whether or not it was "acceptable."  (*Adams* Compl. at ¶84).  According to the Complaint, Givens either failed to review it or failed to appreciate its legal significance because he allowed the Power of Attorney to be executed.  (*Id.*).

[4] At the time, based on Givens's representations, Mohn believed that Agave had been properly formed and that the Agave offering was exempt from registration under federal and state securities laws.  (*Adams* Compl. at ¶¶85, 87).  However, many of the sales of Agave shares did not qualify for these exemptions.  (*Id.* at ¶81).  Moreover, Hyman Lippitt failed to file the appropriate notices to qualify for exemption until February 2002, when Kisor's embezzlement and unauthorized investments were discovered.  (*Id.* at ¶82).

4

In November 2000, GNT began distributing monthly account statements to Agave investors based on data supplied by Kisor that was later found to be fabricated.  (*Id.* at ¶86).  The reported returns spurred investment from U.S. residents beginning in late 2000 and increasing throughout 2001.  (*Id.* at ¶88).  By May 2002, approximately $31,000,000 had been invested.  (*Id.*).  Most of the investors were clients of Hyman Lippitt.  (*Id.*).

In early 2001, after complaints about the timeliness of GNT's monthly account statements, Givens reached an agreement with Hanver, Ltd., a West Indies trust company, whereby Hanver would prepare the account statements.  (*Id.* at ¶154).  GNT, however, continued to receive fees from Agave.  (*Id.*).

In June 2001, acting on Givens's instruction and through Hyman Lippitt's legal work, Agave acquired a seat on the Chicago Board of Options Exchange ("CBOE") in the name of Agave employee, Gil Howard.  (*Id.* at ¶155).  Givens directed Agave to pay Howard a $2.6 million bonus, from which Howard paid the applicable income taxes and then used the balance to purchase the seat.  (*Id.*).  This evaded the CBOE's prohibition on ownership of exchange seats by investor pools.  (*Id.*).

 In September 2001, Hanver informed Givens and Mohn that it suspected that Kisor was supplying incorrect account data .  (*Id.* at ¶157).  After investigating, Givens and Mohn informed Hanver that they believed that Kisor might have misappropriated funds because they could not verify the existence of at least one of the assets in which Kisor had purportedly invested.  (*Id.*).

On February 9, 2002, after being pressed to provide financial statements, Kisor confessed his misconduct to Mohn, who in turn, told Givens.  (*Id.* at ¶158).  On February 10,

2002, Givens directed GNT to terminate Kisor's Power of Attorney and to request EDF Mann to transmit the cash to a bank account in the Cook Islands. (*Id.*). Givens learned that of the $31,000,000, approximately $10,000,000 in cash remained. (*Id.* at ¶159). Kisor had embezzled at least $5,000,000 and the remaining approximately $15,000,000 had been diverted to investments which were inconsistent with the "low risk" options investment strategy presented to investors. (*Id.*). In March or April of 2002, Givens advised Hanver not to disclose Kisor's misconduct to investors. (*Id.* at ¶161). Givens also told Hanver that the investment values as reported to Hanver were accurate and that Hanver should continue to transmit statements reporting those values to investors. (*Id.*).

In March 2002, Givens organized Genesis, LLC, as a Michigan limited liability company with Mohn as its manager. (*Id.* at ¶160). Givens directed Hanver and GNT to issue Genesis shares only to Agave's U.S. Investors. (*Id.*). Givens directed GNT to have Agave transfer the cash in its Cook Islands account to a Genesis account in Michigan. (*Id.*). Genesis then loaned these funds to Jason Malkin, an options trader, who used the funds to establish a brokerage firm, purchase a seat on the exchange, and trade the loaned funds. (*Id.*).

In June 2002, Givens left Hyman Lippitt and moved to Chicago to manage Agave and Genesis. (*Id.* at ¶162).

The SEC commenced an investigation into Kisor's activities. In August 2002, the SEC subpoenaed Mohn. (*Id.* at ¶163). On November 22, 2002, the SEC filed suit against Mohn in this Court alleging that the issuance of Agave shares violated both the registration and anti-fraud provisions of the federal securities laws. *SEC v. Mohn*, No. 02-74634. The assets

of both Agave and Genesis were frozen. (*Adams* Compl. ¶164). Hyman Lippitt agreed to represent Mohn. (*Id.*). However, Hyman Lippitt did not inform Mohn or anyone else that it had formed and previously acted as counsel for Agave and Genesis. (*Id.*).

Plaintiffs contend that, in the course of its representation of Mohn, Hyman Lippitt took various actions that were designed to conceal its role in the investment scheme. First, Hyman Lippitt did not advise Mohn to assert the "advice of counsel" defense to his actions. (*Id.* at ¶166). Second, Hyman Lippitt rejected two proposed receivers submitted by the SEC, and recommended the appointment of Bradley Schram as receiver to oversee the distribution of investor funds, because it believed that Schram would not investigate claims against Hyman Lippitt. (*Id.* at ¶168). Third, Hyman Lippitt advised Mohn to waive the assertion of the "advice of counsel defense" so that, in return for this waiver, the SEC would agree not to seek production of otherwise privileged documents which would have revealed Hyman Lippitt's involvement. (*Id.* at ¶169). Fourth, Hyman Lippitt advised Mohn to settle after finding emails from Mohn to Givens, which, although incriminating to Mohn, would have shown Givens's role in the formation of GNT and GNT's control of Agave. (*Id.* at ¶170).

The Plaintiffs' Complaints against Defendants allege: (I) violations of § 10(b) of the '34 Act and Rule 10b-5 thereunder; (II) violations of MICH. COMP. LAWS ANN. § 451.701, Failure to Register Securities; (III) violations of MICH. COMP. LAWS ANN. § 451.501, Sale of Securities by Misrepresentations and/or Omissions; (IV) Fraud; and (V) Negligence. (*Adams* Compl.). In addition, the *Burket* and *Cliff* Complaints assert claims of: (VI) Legal Malpractice; and (VII) Breach of Fiduciary Duties.

## II.   <u>Standards of Review</u>

7

Defendants Hyman Lippitt and John Does #1 through #20 move to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure in their briefs.  However, throughout their briefs, Defendants Hyman Lippitt and John Does #1 through #20 assert that, in addition to their Rule 12(b)(6) motion, certain claims should be dismissed pursuant to 56 of the Federal Rules of Civil Procedure.  Moreover, Defendant Givens has clearly articulated in his motions, that he moves for the entry of summary judgment of dismissal pursuant to Rule 56 or, alternatively, for entry of an order of dismissal pursuant to Rule 12(b)(6).  Therefore, with respect to each claim, the Court will address whether Defendants are entitled to dismissal pursuant to Rule 12(b)(6) and/or Rule 56.

When deciding a Rule 12(b)(6) motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief."  *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).  "A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Id.*

Alternatively, an entry of summary judgment pursuant to Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  No genuine

8

issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510. The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III.  Applicable Law and Analysis

### A. Count I: Violations of § 10(b) of the '34 Act and Rule 10b-5 Thereunder

Pursuant to section 10(b), 15 U.S.C. § 78j(b), the Securities and Exchange Commission promulgated Rule 10b-5, which makes it unlawful:

(a)     To employ any device, scheme, or artifice to defraud,

(b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading, or

9

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

In connection with the purchase or sale of any security.

To state a claim under §10(b) and Rule 10b-5, a plaintiff must allege, "in connection with the purchase and sale of securities, the misstatement or omission of a material fact made with scienter, upon which the plaintiff justifiable relied and which proximately caused the plaintiff's injury." *In re Comshare, Inc. v. Securities Litig.*, 183 F.3d 542, 548 (6th Cir. 1999).

1. Standing

Defendants contend that Plaintiffs John McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., Jaymac, Inc., William Cliff, Donald Lemire, and Thomas Roderick all lack standing to assert Rule 10b-5 claims. (Br. in Supp. of Mot. to Dismiss at 7). To state a cause of action under § 10(b) and Rule 10b-5, "a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused plaintiff injury." *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000) (quotation omitted). The "in connection with the purchase or sale" requirement limits actions under § 10(b) and Rule 10b-5 to actual purchasers and sellers of securities. *See Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463-64 (2d Cir. 1952).[5]

---

[5] The *Birnbaum* rule was affirmed by the U.S. Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S. Ct. 1917 (1975).

With respect to these Plaintiffs, the Complaints allege:

- Plaintiff John McLaughlin, LLC, purchased $500,000 in Agave shares. (*Burket* Compl. at ¶52).

- Plaintiffs McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., and Jaymac, Inc., (collectively, "the McLaughlin Companies"), began participating in an insurance program in which a policy would be issued to one of the business entities which would pay the premiums, the risks of the policy would be reinsured by insurance syndicates. (*Burket* Compl. at ¶50). The McLaughlin Companies purchased a Loss of Income indemnity insurance policy from Old Pacific Insurance, Ltd. (OPIL), an insurance policy from International Benefit Life Insurance Company (IBLIC), an Efficacy and Completed Warranty indemnity insurance policy from OPIL, a Custom Casualty insurance policy from IBLIC, a Supplemental Disability insurance policy from OPIL, and another insurance policy from IBLIC. (*Burket* Compl. at ¶53). Those policies were reinsured by an entity named Stein Re, which then invested the amounts held on the accounts in Agave shares. (*Id.*).

- Plaintiff William Cliff purchased three Supplemental Disability Insurance Policies from IBLIC, OPIL, and First Fidelity Insurance Company. (*Cliff* Compl. at ¶37(i) through (iii)). Those policies were reinsured by an entity named Frigate Re which then invested the amounts held on the accounts in Agave shares. (*Id.*). Plaintiff Cliff also alleges that in June 2001, he invested $200,000 in Agave shares directly. (*Id.* at ¶37(iv)).

- Plaintiff Donald Lemire purchased a Custom Casualty insurance policy from IBLIC and a one-year extension on that policy, which were reinsured by Frigate Re. (*Cliff* Compl. at ¶43). In addition, Lemire purchased Loss of Income Policy from OPIL, which was reinsured by Stein Re. (*Id.*). Frigate Re and Stein Re invested the amounts held on the accounts in Agave shares. (*Id.*).

- Plaintiff Thomas Roderick purchased a Custom Casualty insurance policy from IBLIC, which was reinsured by Stein Re. (*Cliff* Compl. at ¶39). Stein Re invested the amount held on the account in Agave shares. (*Id.*).

Plaintiffs contend that they are like trust beneficiaries, and should therefore, have

standing to assert claims under § 10(b) and Rule 10b-5, citing *James v. Gerber Products Co.*,

483 F.2d 944 (6th Cir. 1973), *Heyman v. Heyman*, 356 F. Supp. 958 (S.D.N.Y. 1973), and

*Norris v. Wirtz*, 551 F. Supp. 46 (N.D. Ill. 1982). In *James*, for example, the Sixth Circuit held that the beneficiary of a trust, although not the actual purchaser, was entitled to assert claims:

> As beneficiary, she was the person who was to be benefitted by the sale and thus she had the interests of a de facto seller. In this respect she is much closer to the transaction than the plaintiffs in the *Birnbaum* case. In *Birnbaum*, the plaintiffs were not involved to any extent in the sale of securities which were the subject of the complaint.

*James*, 483 F.2d at 948-49; *see also Norris*, 551 F. Supp. at 50 (finding that a trust beneficiary had standing to maintain a § 10(b) action because the beneficiary "would be the person who would feel the impact if any fraud occurred in the stock sales").

All of these cases, however, involved beneficiaries of a trust which directly invested in securities. In this case, Plaintiffs are not trust beneficiaries. Rather, Plaintiffs participated in insurance programs, which were then reinsured by insurance syndicates. It was these insurance syndicates that invested in Agave shares. Even though Plaintiffs supplied the funds used to make the Agave purchases, they were not "purchasers" of the Agave shares. *See, e.g.*, *Fuchs v. Swanton Corp.*, 482 F. Supp. 83, 88 (S.D.N.Y. 1979) (finding that plaintiff failed to satisfy the "*Birnbaum* Rule" for standing where he merely provided a loan to the actual purchaser).

Finally, Plaintiffs contend that in *SEC v. Mohn*, No. 02-74634, the SEC required foreign investors to disclose their "beneficial owners" in their proof of claims to the Court-appointed receiver, so that the receiver could distribute the remaining investor funds. (*See* Pl.'s Resp., Ex. F, SEC's Br.). However, this disclosure requirement was to ensure that the money was not distributed to foreign investors who were "controlled by Mohn, Kisor, or

12

2:05-cv-72110-PJD-MKM   Doc # 27   Filed 12/29/05   Pg 13 of 41   Pg ID 859

other perpetrators of the fraudulent scheme." (*See id.*, Ex. F at 11). Identifying the "beneficial owners" to ensure that money is not distributed to culpable parties is unrelated to the issue of standing for the purposes of § 10(b) and Rule 10b-5 claims, which have been limited to the actual purchasers and sellers of securities for policy reasons. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S. Ct. 1917 (1975). Accordingly, Plaintiffs McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., Jaymac, Inc., Donald Lemire, and Thomas Roderick lack standing to assert Rule 10b-5 claims. In addition, Plaintiff William Cliff lacks standing to assert a Rule 10b-5 claim with respect to all but the June 2001 $200,000 investment in Agave shares. Therefore, because no genuine issue of fact remains as to whether these Plaintiffs were purchasers of Agave securities, the Court will grant Defendants' Motions for Summary Judgment with respect to these claims.

2. <u>Sufficiency of Misrepresentation and Omission Allegations</u>

Defendants contend that contrary to the requirements of the Private Securities Litigation Reform Act of 1985 ("PSLRA"), Plaintiffs have failed to allege specific misrepresentations or omissions to support their Rule 10b-5 claims. The PSLRA provides, in pertinent part:

> [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all of the facts on which that belief is formed.

> * * *

> [T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the

13

defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1)-(2).

First, Defendants contend that Plaintiffs' Complaints fail to allege that the misrepresentations were made by Givens, Hyman Lippitt, or any of the John Does.  Second, Defendants contend that Plaintiffs' Complaints fail to allege that the misrepresentations made were false.

Plaintiffs' Complaints allege that "Hyman Lippitt prepared the documents by which Agave Shares were offered and sold . . ." (*Adams* Compl. at ¶78) and that "[i]nvestors were given a brochure ('Agave Brochure') containing generic information about the options strategy employed by Kisor, which they were told had outperformed the S & P 500 in every year since 1994 . . ." (*Adams* Compl. at ¶79).  Plaintiffs also allege that statements reflecting Agave's positive performance were "later found to have been fabricated." (*Adams* Compl. at ¶156).

In addition, Plaintiffs' Complaints allege that:

Britney Holdings, Ltd. ("Britney") was the contingent beneficiary of an interest in Stein Re relating to the policies thus far purchased by the McLaughlin Companies.  At that time, the funds . . . were transferred to Agave.  Although McLaughlin was not notified in advance of this transfer or asked to consent, he was told that the funds had been transferred and that Agave was earning returns in the neighborhood of 1-2% per month.  McLaughlin was impressed with the represented returns and . . . John McLaughlin LLC purchased $500,000 in Agave Shares.

(*Burket* Compl. at ¶¶ 51-52).  Moreover, "based on advice form [sic] Hyman Lippitt . . . Britney invested . . . in Agave Shares . . ." (*Burket* Compl. at ¶54).

The Complaints also allege that: "Agave shares were sold to investors, including

14

Plaintiffs, by means of untrue statements of material fact, and omissions to state material fact, including but not limited to, the following: . . . (h) Misrepresentation of Kisor's performance and, from October 2000 forward, the performance of Agave." (*Adams* Compl. at ¶173(h)).

Additionally, Plaintiffs' Complaints set forth a number of omissions. Plaintiffs contend:

> None [of the investors] were told that Agave was controlled by Givens, or that Givens or Kisor could instruct GNT to act on Agave's behalf, nor were any told of the existence of the Services Agreement or its material terms. None were told of the fact that Kisor managed Agave funds at EDF Mann by means of a general, rather than limited, Power o Attorney, which gave him the opportunity to both embezzle Agave funds and to invest those funds in a manner totally inconsistent with the "low risk options strategy which was described to investors. . . .
>
> Investors were not told of the numerous risks inherent in investment in an entity organized under the laws of the Cook Islands. No information was given on Kisor's background or experience.

(*Adams* Compl. at ¶¶79-80).

Defendants contend, however, that Givens and Hyman Lippitt had no affirmative duty to disclose this information to most of the Plaintiffs. (Defs.' Br. in Supp. of Mot. at 11). According to Defendants, the only Plaintiffs who had an attorney-client relationship with Defendants, giving rise to an affirmative duty, were John McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Jaymac, Inc., Britney Holdings, Ltd., William Cliff, Donald Lemire, and Thomas Roderick. (*See Burket* Compl. ¶¶ 45, 50, 53, 96; *Cliff* Compl. ¶¶ 36-43, 87).

The U.S. Supreme Court has held that absent an affirmative duty to disclose, omissions cannot form the basis of a Rule 10b-5 claim. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 174, 114 S. Ct. 1439, 1446 (1994). Plaintiffs

15

assert that an issuer has a duty to disclose, citing *Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063 (1988). Plaintiffs contend that because the "issuer" here was an entity formed and controlled by Hyman Lippitt and Givens, Hyman Lippitt and Givens are liable as issuers.

In *Pinter*, the U.S. Supreme Court analyzed the statutory definition of a "seller" for purposes of liability under Section 12 of the Securities Act of 1933. *Id.* at 647, 108 S. Ct. at 2078. The Court found that those who take part in the solicitation process, and who "urge" the sale of securities either to serve their own interests or those of the issuer may be held liable as primary violators of Section 12 of the Securities Act of 1933. *Id.* at 655, 108 S. Ct. at 2082.

However, neither the U.S. Supreme Court nor the Sixth Circuit have extended *Pinter's* analysis under Section 12 to Rule 10b-5 liability.[6] Moreover, even if *Pinter* could be extended to this case, Plaintiffs have merely alleged that Defendants "advised" Plaintiffs to

---

[6] Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, provides:

Any person who–(1) offers or sells a security in violation of section [5] . . . shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Therefore, under Section 12 of the Securities Act of 1933, liability applies only to those who sell securities directly to the purchaser or promote the sale of securities for their own financial gain. *Pinter*, 486 U.S. at 647, 108 S. Ct. at 2078. "The majority of courts considering Section 12 subsequent to *Pinter* have further restricted its application to initial distributions of a security, excluding aftermarket transactions." *Booth v. Verity, Inc.*, 124 F. Supp. 2d 452, 463-64 (W.D. Ky. 2000) (listing cases); *see, e.g.*, *Panek v. Bogucz*, 718 F. Supp. 1228, 1232 (D. N.J. 1989) (noting that "the thrust of the 1933 Act is to protect the investor against misstatements and omissions made in the course of placing or issuing securities in the market place. It is not aimed at trades of listed securities in the market place after distributions have been completed.").

invest; Plaintiffs have not alleged that Givens's advice constitutes the type of "urging" contemplated in *Pinter*.

Consequently, the Court finds that the only Plaintiffs who have adequately alleged a duty, on the part of Givens and Hyman Lippitt, to disclose the omitted information are Plaintiffs John McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Jaymac, Inc., Britney Holdings, Ltd., William Cliff, Donald Lemire, and Thomas Roderick.  To the extent that Plaintiffs Jack Burket, Linda Burket, Norman Easnor, Susan I. Lindquist as Trustee of the Susan I. Lindquist Trust, and all of the Plaintiffs listed in the Adams Complaint, assert Rule 10b-5 claims against Defendants based on alleged omissions, the Court agrees that Plaintiffs' Complaints fail to adequately allege a duty, and must therefore, be dismissed pursuant to Rule 12(b)(6).  However, Plaintiffs' Complaints do adequately allege Rule 10b-5 claims against Defendants based on alleged misrepresentations, therefore to the extent Defendants seek Rule 12(b)(6) dismissal of Plaintiffs' Rule 10b-5 claims against Defendants based on alleged misrepresentations, Defendants' Motions are denied.

Furthermore, Defendant Terry Givens's Motion for Summary Judgment pursuant to Rule 56 against all Plaintiffs, contending that no genuine issue of fact remains as to whether he made misrepresentations or omissions as required by Rule 10b-5, is denied.  The Court believes that genuine issues of fact remain as to whether Givens misrepresented Kisor's performance and, from October 2000 forward, the performance of Agave.  (*Adams* Compl. at ¶173(h); *Burket* Compl. at ¶74(h); *Cliff* Compl. at ¶64(h)).  In addition, the Court believes that genuine issues of fact remain as to whether Givens failed to disclose certain conflicts of

17

interest and risks to Plaintiffs John McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Jaymac, Inc., Britney Holdings, Ltd., William Cliff, Donald Lemire, and Thomas Roderick. (*Burket* Compl. at ¶¶74(a)-(g), (i), *Cliff* Compl. at ¶¶64(a)-(g), (i)).

### 3. Scienter Allegations

Defendants contend that Plaintiffs have failed to allege facts giving rise to a strong inference of scienter with regard to each alleged act or omission as required by 15 U.S.C. § 78u-4(b)(2). The Court disagrees.

In Rule 10b-5 cases, scienter is a "mental state embracing intent to deceive, manipulate or defraud." *In re Comshare*, 183 F.3d at 548. This Circuit has held that actual knowledge of the falsity of affirmative misrepresentations will satisfy the scienter requirement. *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 672 (6th Cir. 2003); *see also In re Rospatch Sec. Litig.*, 760 F. Supp. 1239, 1252 (W.D. Mich. 1991) (finding that the § 10(b) requirement that a defendant act with an "intent to deceive, manipulate or defraud" is satisfied by scienter allegations of "actual knowledge" or "reckless failure to know"). Moreover, a high degree of recklessness may also satisfy the scienter requirement where the defendant engages in "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *D.E.&J Partnership v. Conaway*, 284 F. Supp. 2d 719, 745 (E.D. Mich. 2003). "While the danger need not be known, it must be so obvious that any reasonable man would have known it." *Id.*

The Complaints allege that Givens had actual knowledge of the omitted facts. (*Adams* Compl. at ¶175). In addition, the Complaints allege that, throughout the course of its

18

representation of Mohn, Hyman Lippitt took various actions to conceal its role in the securities scheme. (*Adams* Compl. at ¶¶165-70). Therefore, the Court believes that Plaintiffs' Complaints have sufficiently pleaded the scienter requirement.

Furthermore, Defendant Terry Givens's Motion for Summary Judgment pursuant to Rule 56 against all Plaintiffs, contending that no genuine issue of fact remains as to whether he acted with scienter is denied. The Court believes that genuine issues of fact remain as to whether Givens had actual knowledge of the falsity of the alleged affirmative misrepresentations.

　　　4. <u>Loss Causation Allegations</u>

Defendants contend that Plaintiffs' Complaints fail to demonstrate loss causation. The PSLRA provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). The "loss causation" element of a 10b-5 claim is the same as the proximate cause requirement for a claim of common law fraud. *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1632 (2005).

Plaintiffs' Complaints allege that Defendants' failure to disclose resulted in damages in excess of 75% of the amount each Plaintiff invested in Agave. (*Adams* Compl. at ¶178). Thus, the Court believes that Plaintiffs have adequately alleged loss causation.

However, Defendants contend that Plaintiffs' Complaints specifically allege intervening causes which themselves were the proximate cause of any losses Plaintiffs may have suffered. For example, Defendants contend that Kisor's embezzlement and diversion of investors' funds, as well as Kisor's falsification of the account data used to prepare the

19

investors' monthly account statements, constitute intervening causes.  However, as Plaintiffs point out, Kisor's embezzlement and diversion could only occur because Kisor had a general power of attorney which allowed him unfettered discretion over Agave's brokerage accounts, and it was this fact that Defendants failed to disclose to Plaintiffs.  Thus, Plaintiffs contend that the loss that occurred as a result of Kisor's embezzlement and diversion was not an intervening cause of loss, rather, it was a foreseeable risk that actually occurred.  *See, e.g.*, *In Re Initial Public Offerings Securities*, 2005 WL 1529659, at *5 (examining Second Circuit Court of Appeals cases in which the Court found loss causation where there was "the concealment of a risk and the materialization of that risk").  Therefore, the Court believes that Plaintiffs have adequately alleged loss causation.

Moreover, Defendants Hyman Lippitt, John Does #1 through #20, and Terry Givens move for summary judgment pursuant to Rule 56, contending that no genuine issue of fact remains as to whether Plaintiffs can establish loss causation is denied.  The Court believes that genuine issues of fact remain as to whether Defendants' alleged misrepresentations and omissions were the proximate cause of Plaintiffs' losses.

5.  Plaintiffs' Claims against the John Does

Defendants contend that Plaintiffs have failed to state Rule 10b-5 claims against John Does #1 through #20.  Plaintiffs' Complaints allege that "John Does #1 through #20 are shareholders, partners, members, and/or employees of Hyman Lippitt . . . . Upon information and belief, the Plaintiffs allege that each of the fictitiously named Defendants is responsible in some actionable manner for the events alleged herein and that the damages herein were proximately caused thereby."  (*Adams* Compl. at ¶66).  Therefore, Plaintiffs have stated a

20

claim against the John Does in their Complaints.

6. Timeliness of Plaintiffs' Rule 10b-5 Claim

Defendants contend that Plaintiffs' Rule 10b-5 claim is time-barred and should be dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 10b-5 claims must "be brought no later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). In a Rule 10b-5 claim, discovery includes "inquiry notice." *See New England Health Care Employees Pension Fund v. Ernst & Young*, 336 F.3d 495, 500 (6th Cir. 2003) (decided under the prior 1- and 3- year limitations period imposed by *Lampf v. Gilbertson*, 501 U.S. 350, 111 S. Ct. 2773 (1991)). The Sixth Circuit adopted the majority view of inquiry notice, finding that "knowledge of suspicious facts . . . triggers a duty to investigate" and the "limitations period begins to run when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud." *New England Health Care*, 336 F.3d at 501.

Plaintiffs filed their Complaints on May 27, 2005, June 2, 2005, and June 6, 2005. In their Complaints, Plaintiffs contend that they "did not discover the facts upon which Hyman Lippitt's culpability depends, until December of 2004." (*Burket* Compl. at ¶¶78, 83; *Adams* Compl. at ¶¶117, 182; *Cliff* Compl. at ¶¶68, 73). Defendants contend that the SEC's Complaint against Mohn, filed in November 2002, and the issuance of a press release on the SEC's website in November 2002, constituted suspicious facts which triggered Plaintiffs' duty to investigate. Consequently, Defendants contend that the 2-year limitations period expired in November 2004. In support of their argument that Plaintiffs were on inquiry

21

notice of the alleged securities fraud claims, Defendants cite *Caprin v. Simon Transp. Servs.,
Inc.*, No. 01-4049, 2004 WL 326995 (10th Cir. Feb. 23, 2004) (finding that investors were
put on inquiry notice of possible fraudulent activity by corporation when the corporation
issued a press release announcing revenue shortfall of $6,000,000), and *Cohen v. USEC, Inc.*,
Nos. 02-1459 & 02.1489, 2003 WL 21689097 (4th Cir. July 21, 2003) (finding that
company's press release that it was abandoning "the technology that serve[d] as the *raison
d'etre* of its core business model only months after the company's [initial public offering]"
was sufficient to put the investors on inquiry notice).

However, unlike the press releases in *Caprin* and *Cohen*, the SEC's November 21, 2002
press release did not refer to Hyman Lippitt or Givens.  (*See* Defs.' Mot. Ex. E).  Although
Defendants contend that the Complaint in *SEC v. Mohn* referred to the "Declaration of Keith
Barrett," which implicated Hyman Lippitt, the Barrett Declaration was not published on the
SEC's website.[7]   In this case, however, the Court does not believe that the press release

---

[7] According to Plaintiffs, the only reference to Defendants is not contained in the Barrett
Declaration itself.  Instead, attached to the Barrett Declaration is a lengthy transcript in which
Mohn mentions Hyman Lippitt a number of times.  For example, in the transcript Mohn states
that Hyman Lippitt had prepared subscription documents:

    A.    . . . [Agave's subscription documents] came from the law firm that I referred
            [Kisor] to, and I called them and said, Okay, have you done this right; is this
            safe; you know, you guys did the work; is it – yes, okay.
    Q.    And that law firm?
    A.    Hyman Lippitt.  I've used them for years, and they have a great reputation,
            and I thought, Okay.
    Q.    Were they going to – what would their role be in Agave as you understand
            –
    A.    I don't think they had a role.  I think they were hired to build the private
            placement and the subscription agreement.  That's, I think, all they were
            hired to do.

(Defs.' Mot. Ex. F, Attachment to Barrett Decl., Mohn Tr. at 163-64).
    However, the Court does not believe that Plaintiffs, "exercising reasonable diligence,"

provided sufficient notice of Defendants' participation.  *See, e.g.*, *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 365 (S.D.N.Y. 2001),[8] (finding that press releases and news articles were not sufficient to put shareholders on inquiry notice of a corporation's involvement in securities fraud where, for example, one article merely mentioned the corporation, but did not hint that it was involved in fraudulent transactions).

Therefore, because the Court does not believe that Plaintiffs should have been on inquiry notice when the SEC filed its Complaint against Mohn in November 2002, and/or when the SEC issued a press release on its website in November 2002, the Court does not believe that it would be proper to rule as a matter of law that Plaintiffs were on inquiry notice in November 2002.

7.  Plaintiffs' Claim under § 20(a) of the Exchange Act[9]

Plaintiffs allege that Givens and Hyman Lippitt "are also liable as controlling persons of Agave within the meaning of Section 20(a) of the '34 Act." (*Burket* Compl. at ¶77; *Adams* Compl. at ¶176; *Cliff* Compl. at ¶67).  Section 20(a) provides:

───────────────

should have obtained the Barrett Declaration from the Court files, reviewed all of the lengthy attachments, and suspected that Hyman Lippitt was involved in the fraudulent scheme because of Mohn's statement regarding Hyman Lippitt's preparation of the subscription documents.

[8] Defendants cite this case in support of their argument that the SEC's November 2002 press release placed Plaintiffs' on inquiry notice.  (Br. in Supp. of Defs.' Mot. at 17).  This case, however, clearly stands for the proposition that a press release which reveals inaccuracies in financial statements or fraud by one member of a corporation, "does not necessarily constitute notice suggesting a probability of [that corporation's] knowing misrepresentation or fraud."  *In re Livent*, 148 F. Supp. 2d at 365.

[9] Although Plaintiffs did not allege violations of § 20(a) of the Exchange Act as a separate count, through one allegation in their Complaints, Plaintiffs assert that Defendants violated § 20(a).  (*See Adams* Compl. at ¶176; *Burket* Compl. at ¶77; *Cliff* Compl. at ¶67).

> Every person who, directly or indirectly, controls any person liable under any
> provision of this title or of any rule or regulation thereunder shall also be liable
> jointly and severally with and to the same extent as such controlled person to any
> person to whom such controlled person is liable, unless the controlling person
> acted in good faith and did not directly or indirectly induce the act or acts
> constituting the violation or cause of action.

15 U.S.C. § 78t(a).

To establish control person liability under § 20(a): (1) the controlled person must have committed an underlying violation of the securities laws; (2) the controlling person must have directly or indirectly controlled the person liable for the securities law violation; and (3) the defendant must have "culpably participated" in that underlying violation. *See D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 750 (E.D. Mich. 2003) (citing *In re Rospatch Sec. Litig.*, 760 F. Supp. 1239, 1248 (W.D. Mich. 1991)).

In this case, the Court believes that Plaintiffs have adequately alleged that: (1) Agave committed an underlying violation of the securities laws; (2) Givens and Hyman Lippitt controlled Agave; and (3) that Givens and Hyman Lippitt culpably participated in the underlying violation. Therefore, Plaintiffs' Complaints state a claim under § 20(a). In addition, viewing the facts in the light most favorable to Plaintiffs, the Court believes that a genuine issue of fact remains as to whether Defendants are "controlling persons" of Agave within the meaning of § 20(a).

### B.  Counts II and III: Violations of Section 410 of the Michigan Uniform Securities Act (MUSA)

Count II of Plaintiffs' Complaints alleges that Defendants failed to register securities in violation of Section 301 of the MUSA, MICH. COMP. LAWS ANN. § 451.701, which provides:

It is unlawful for any person to offer or sell any security in this state unless 1 of the following is met:

(1)     It is registered under this act.

(2)     The security or transaction is exempted under section 402.

(3)     The security is a federally covered security.

Moreover, Count II alleges that by virtue of Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(b), Defendants are liable for such violations.

Count III of Plaintiffs' Complaints alleges that Defendants sold securities by means of misrepresentations and omissions in violation of Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2), which provides:

(a) Any person who does either of the following is liable to the person buying the security from him or her . . .:

(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known of the untruth or omission.

1.  Standing

Defendants contend that Plaintiffs John McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., Jaymac, Inc., William Cliff, Donald Lemire, and Thomas Roderick all lack standing to assert MUSA claims. (Br. in Supp. of Mot. to Dismiss at 21).  MUSA provides a remedy of rescission and, as with Rule 10b-5, claims under MUSA may only be maintained by a buyer of the securities.  *See* MICH. COMP. LAWS ANN. § 451.810(a).  As explained above, Plaintiffs

McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., Jaymac, Inc.,

Donald Lemire, Thomas Roderick and William Cliff, with respect to all but the June 2001

$200,000 investment in Agave shares, are not "buyers" of the securities.  Therefore, these

Plaintiffs lack standing to assert MUSA claims.  Consequently, because no genuine issue of

fact remains as to whether these Plaintiffs were purchasers of Agave securities, the Court will

grant Defendants' Motions for Summary Judgment with respect to these Plaintiffs' Counts

II and III claims.

> 2.  Section 410(b)

Counts II and III of Plaintiffs' Complaints assert claims against Hyman Lippitt pursuant

to Section 410(b) of the MUSA, MICH. COMP. LAWS ANN. § 451.810, which imposes liability

on a person having one of the specified relationships with the seller and makes such a person

"liable jointly and severally with and to the same extent as the seller."  MICH. COMP. LAWS

ANN. § 451.810(b).  Because Plaintiffs did not sue the actual seller of the securities,

Defendants contend that Plaintiffs cannot proceed under § 410(b) citing *Metal Tech Corp.*

*v. Metal Teckniques Co., Inc.*, 703 P.2d 237, 244 (Or. App. 1985) (finding that officers and

directors may be held liable only if the seller is first found liable).

However, the holding in *Metal Tech* does not require the plaintiff to sue the actual

seller; rather, it only requires the plaintiff to prove that the seller is liable.  In *South Western*

*Oklahoma Development Authority v. Sullivan Engine Works, Inc.*, 910 P.2d 1052 (Okl.

1996), the Oklahoma Supreme Court rejected the argument that the MUSA requires the

plaintiff to sue the actual seller: "The plaintiff need only prove that seller has committed the

acts or omissions which may result in liability according to subsection (a).  As long as the

requirements of 408(b) . . . are proven, a plaintiff may bring an action against the material participant only or against the seller as well." *Id.* at 1058.

In this case, as set out above, the Court believes that, although Hyman Lippitt is not the seller of the securities, Plaintiffs have pleaded that Hyman Lippitt was a material participant in the sale of Agave shares, and therefore, Plaintiffs have stated a claim upon which relief can be granted.

Furthermore, Defendant Terry Givens moves for summary judgment pursuant to Rule 56, contending that no genuine issue of fact remains as to whether or not Defendants were the sellers of the securities. However, because the Court believes that genuine issues of material fact remain as to whether Defendants were material participants in the sale of Agave shares, summary judgment on Plaintiffs' claims under Section 410(b) of the MUSA is denied.

### 3. Class of Persons Against Whom MUSA Liability May be Asserted

Defendants contend that Hyman Lippitt is not a member of any class of persons against whom liability may be asserted under MUSA, which provides for direct liability of the seller of securities, MICH. COMP. LAWS ANN. § 451.810(a), and vicarious liability for those who control the seller and brokers and agents who materially aid in the sale, MICH. COMP. LAWS ANN. § 451.810(b). Plaintiffs assert that Hyman Lippitt and Givens are liable as controlling persons for MUSA violations. Plaintiffs' Complaints allege:

> 181. By virtue of § 451.810, Plaintiff is entitled to recover the entire consideration paid for the Agave Shares. Defendants Givens and Hyman Lippitt are directly liable for the aforesaid violations and are also liable by virtue of § 451.810(b), which provides that every person who directly or indirectly controls a seller [sic] liable under § 451.810, and every agent of the seller who materially

aids in the sale, is also liable jointly and severally with the seller. Because Givens acted as alleged above within the course and scope of his employment with Hyman Lippitt, Givens and Hyman Lippitt were "control persons" of Agave. In addition, by acting as alleged above, Givens acted as an agent of the seller and materially aided in the sale of Agave Shares to Plaintiffs. Hyman Lippitt is vicariously liable for the acts and omissions to act of Givens, because Givens at all times acted, or failed to act within the course and scope of his employment by Hyman Lippitt.

* * *

185. . . . In addition, Givens and Hyman Lippitt were "control persons": of the nominal seller, Agave. Also, by acting as alleged above, Givens acted as an agent of the seller and materially aided in the sale of Agave shares to Plaintiffs. Hyman Lippitt is vicariously liable for the acts and omissions to act of Givens, because Givens at all times acted, or failed to act, within the course and scope of his employment by Hyman Lippitt.

(*Adams* Compl. at ¶¶181, 185).

The Court believes that these paragraphs sufficiently allege that Givens and Hyman Lippitt are liable as controlling persons for violations of MICH. COMP. LAWS ANN. § 451.810.

Moreover, to the extent Defendant Terry Givens asserts that summary judgment dismissing Plaintiffs' claims under Section 410(b) of the MUSA, his Motion is denied. The Court believes that genuine issues of material fact remains as to whether Defendants were control persons pursuant to MICH. COMP. LAWS ANN. § 451.810.

4. Sufficiency of Misrepresentation and Omission Allegations

Count III of Plaintiffs' Complaints alleges that Defendants sold securities by means of misrepresentations and omissions in violation of Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2). As set forth above, however, not all Plaintiffs have adequately alleged a duty on the part of Givens and Hyman Lippit to disclose the omitted information.

Consequently, the Court finds that the only Plaintiffs who have adequately alleged a duty, on the part of Givens and Hyman Lippitt, to disclose the omitted information are Plaintiffs John McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Jaymac, Inc., Britney Holdings, Ltd., William Cliff, Donald Lemire, and Thomas Roderick.  To the extent that Plaintiffs Jack Burket, Linda Burket, Norman Easnor, Susan I. Lindquist as Trustee of the Susan I. Lindquist Trust, and all of the Plaintiffs listed in the Adams Complaint, assert claims pursuant to Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2) against Defendants based on alleged omissions, the Court believes that that Plaintiffs' Complaints fail to adequately allege a duty, and must therefore, be dismissed pursuant to Rule 12(b)(6).  However, Plaintiffs' Complaints do adequately allege claims pursuant to  Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2), against Defendants based on alleged misrepresentations.  Therefore to the extent Defendants seek Rule 12(b)(6) dismissal of Plaintiffs' claims under Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2), based on alleged misrepresentations, Defendants' Motions are denied.

Furthermore, Defendant Terry Givens's Motion for Summary Judgment pursuant to Rule 56 against all Plaintiffs, contending that no genuine issue of fact remains as to whether he made misrepresentations or omissions as required by Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2), is denied.  The Court believes that genuine issues of fact remain as to whether Givens misrepresented Kisor's performance and, from October 2000 forward, the performance of Agave.  (*Adams* Compl. at ¶173(h); *Burket* Compl. at ¶74(h); *Cliff* Compl. at ¶64(h)).  In addition, the Court believes that genuine issues of fact remain as

29

to whether Givens failed to disclose certain conflicts of interest and risks to Plaintiffs John
McLaughlin, John McLaughlin LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc.,
C.B.S. Agency, Jaymac, Inc., Britney Holdings, Ltd., William Cliff, Donald Lemire, and
Thomas Roderick. (*Burket* Compl. at ¶¶74(a)-(g), (i), *Cliff* Compl. at ¶¶64(a)-(g), (i)).

   5.  Timeliness of Plaintiffs' MUSA Claims

   Defendants contend that Plaintiffs' remaining claims under the MUSA are time barred.
Count II of Plaintiffs' Complaints alleges liability based on alleged unregistered sales of
securities. The MUSA provides: "A person may not bring an action under subsection (a)(1)
more than 2 years after the contract of sale." MICH. COMP. LAWS ANN. § 451.810(e).

   Plaintiffs filed their Complaints in May and June of 2005. However, Plaintiffs invested
in Agave over two years before they filed their Complaints. (*See Burket* Compl. at ¶¶46-48,
52 & 54; *Adams* Compl. at ¶¶89-153; *Cliff* Compl. at ¶¶37(iv), 39 & 43). Plaintiffs assert
that their claims are tolled under Michigan's Fraudulent Concealment Statute, MICH. COMP.
LAWS ANN. § 600.5855.   (*Adams* Compl. at ¶182).

   Moreover, Count III of Plaintiffs' Complaints allege that there were material
misrepresentations and omissions in the sale of the securities. The MUSA provides: "A
person may not bring an action under subsection (a)(2) more than 2 years after the person,
in the exercise of reasonable care knew or should have known of the untruth or omission, but
in no event more than 4 years after the contract of sale." MICH. COMP. LAWS ANN. §
451.810(e).

   Plaintiffs assert that these claims are tolled under Michigan's Fraudulent Concealment
Statute, where the following Plaintiffs invested in Agave more than four years before they

filed their Complaints:

- Plaintiffs Jack and Linda Burket allege that their first investment in Agave of $125,023 occurred on January 1, 2001. (*Burket* Compl. at ¶46).

- Plaintiff Norman Eansor alleges that his first investment of $100,000 occurred on February 1, 2001. (*Burket* Compl. at ¶47).

- Plaintiff Susan Lindquist alleges that the first investment by her trust in the amount of $500,000 occurred on January 1, 2001. (*Burket* Compl. at ¶48).

- Plaintiff Curtis Callahan purchased $42,500 in Agave shares in January 2001. (*Adams* Compl. at ¶95).

- Plaintiff Douglas Chapple purchased $100,000 in Agave shares in April 2001. (*Adams* Compl. at ¶96).

- Plaintiff Phillip Church purchased $100,000 in Agave shares on February 1, 2001. (*Adams* Compl. at ¶99).

- Plaintiffs Ronald Cutler purchased $197,071 in Agave shares on May 1, 2002. (*Adams* Compl. at ¶100).

- Plaintiff Carol Cutler purchased $267,212 in Agave shares on March 27, 2001. (*Adams* Compl. at ¶101).

- Plaintiff George Dussich purchased $200,000 in Agave shares on June 1, 2001. (*Adams* Compl. at ¶105).

- Plaintiff Walter Everett purchased $479,436 in Agave shares in May 2001. (*Adams* Compl. at ¶107).

- Plaintiffs James and Valerie Felter purchased $50,000 in Agave shares on February 22, 2001. (*Adams* Compl. at ¶111).

- Plaintiff Marion Felter purchased $50,000 in Agave shares on January 31, 2001. (*Adams* Compl. at ¶112).

- Plaintiff Jillane Giesin purchased $106,000 in Agave shares on May 3, 2001. (*Adams* Compl. at ¶113).

- Plaintiff Stephen P. Grokiewicz purchased $23,600 in Agave shares on April 5, 2001. (*Adams* Compl. at ¶114).

31

- Plaintiff William Jarvis purchased $500,000 in Agave shares on March 31, 2001. (*Adams* Compl. at ¶123).

- Plaintiff Rita LoGrasso purchased $40,000 in Agave shares on April 25, 2001. (*Adams* Compl. at ¶126).

- Plaintiff Kathryn P. Mohn Living Trust purchased $335,000 in Agave shares on September 14, 2000.  (*Adams* Compl. at ¶129).

- Plaintiff Laurence F. Mohn Living Trust purchased $150,000 in Agave shares on September 14, 2000.  (*Adams* Compl. at ¶131).

- Plaintiff Pamela Munro purchased $42,000 in Agave shares on April 30, 2001. (*Adams* Compl. at ¶134).

- Plaintiff Keith Pierce purchased $39,664 in Agave shares on April 5, 2001.  (*Adams* Compl. at ¶136).

- Plaintiff Pinehurst Investments purchased $50,000 in Agave shares on January 19, 2001.  (*Adams* Compl. at ¶137).

- Plaintiff Janet Rebone purchased $200,000 in Agave shares on April 1, 2001.  (*Adams* Compl. at ¶142).

- Plaintiff Nikolay Tchopev purchased $13,400 in Agave shares on April 5, 2001. (*Adams* Compl. at ¶148).

Defendants argue that Michigan's Fraudulent Concealment Statute does not apply to toll the MUSA's statute of repose.[10]  Defendant cites to an Official Comment to a subsequent version of the Uniform Securities Act:

> The 1956 Act section 410(p) provided that: "No person may sue under this section more than two years after the contract of sale."  Under this provision, the state courts generally decline to extend a statute of limitations period on grounds of fraudulent concealment or equitable tolling . . . [Section 410(p) of] the 1956

---

[10] "A statute of limitation governs the time within which legal proceedings must be commenced after a cause of action accrues.  A statute of repose, on the other hand, limits the time within which an action may be brought and is unrelated to the accrual of any cause of action."  *Hayes v. General Motors Corp.*, 94 F.3d 644 (6th Cir. 1996) (citations omitted).

Act, is a unitary statute of repose . . . .  It is not intended that equitable tolling be
permitted.

Uniform Laws Annotated, Uniform Securities Act of 2002, § 509, Official Comment #14.

Although this Official Comment was included in a later version of the Uniform
Securities Act, it specifically addresses the 1956 version of the Uniform Securities Act,
which was the version adopted in Michigan.  Therefore, the Court believes that Count II is
barred, as to all Plaintiffs, by the two year statute of repose, to which Michigan's Fraudulent
Concealment Statute does not apply.  Moreover, Count III is barred by the four year statute
of repose with respect to the following Plaintiffs: Jack and Linda Burkets' first investment,
Norman Eansor's first investment, and Susan Lindquist's first investment.  In addition,
Plaintiffs Curtis Callahan, Douglas Chapple, Phillip Church, Ronald Cutler, Carol Cutler,
George Dussich, Walter Everett, James and Valerie Felter, Marion Felter, Jillian Giesin,
Stephen Gronkiewicz, William Jarvis, Rita LoGrasso, Kathryn P. Mohn Living Trust,
Laurence F. Mohn Living Trust, Pamela Munro, Keith Pierce, Pinehurst Investments, Janet
Rebone, and Nikolay Tchopev's Count III claims against Defendants are time barred and
shall be dismissed.

### C. Count IV: Fraud

Defendants argue that Plaintiffs' Complaints fail to state a claim for fraud.  The
elements of fraud are: (1) the defendant made a material representation; (2) the representation
was false; (3) at the time of making the representation, the defendant knew that it was false,
or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) the
defendant made it with the intention that it should be acted upon by plaintiff; (5) the plaintiff

33

acted in reliance upon it; and (6) the plaintiff thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). Moreover, for "silent fraud" there must have been a suppression of material facts and a duty to disclose them. *See M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 35-36, 585 N.W.2d 33, 40-41 (1998).

In this case, in addition to the allegations Plaintiffs set forth in the facts section of their Complaints, Plaintiffs allege:

> 188.  Hyman Lippitt participated in a fraud perpetrated upon Plaintiffs in that Givens formed and controlled Agave and knew and/or recklessly disregarded the fact that Agave Shares were being sold through false representations of material fact and omissions to state other material facts, including misrepresentations and/or omissions contained in or omitted from documents created by him and/or reviewed by him.  Such documents include but are not limited to the Subscription Agreements attached hereto as Exhibits E and F and the Agave Brochure attached hereto as Exhibit G.

(*Adams* Compl. at ¶188).

Consequently, Plaintiffs' Complaints state claims for fraud.  Furthermore, viewing the facts in the light most favorable to Plaintiffs, genuine issues of material fact remain precluding summary judgment, such as whether Givens made misrepresentations, and whether Givens made such misrepresentations knowingly or recklessly.

### D. Count V: Negligence

Defendants also argue that Plaintiffs' Complaints fail to state a claim for negligence. In order to demonstrate a claim of negligence, a plaintiff must prove the following four elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000).

In this case, in addition to the allegations Plaintiffs set forth in the facts section of their Complaints, Plaintiffs allege:

> 191. . . . Hyman Lippitt, through Givens, participated in the making of false representations of material fact and omitted to state other material facts including misrepresentations and/or omissions contained in or omitted from documents created by him and/or reviewed by Givens, without the exercise of due care as to whether the misrepresented facts were true of as to whether the omitted true facts should be disclosed. Such documents include but are not limited to the Subscription Agreements attached hereto as Exhibits E and F and the Agave Brochure attached hereto as Exhibit G.

(*Adams* Compl. at ¶191).

Consequently, Plaintiffs' Complaints state claims for negligence. Furthermore, viewing the facts in the light most favorable to Plaintiffs, genuine issues of material fact remain precluding summary judgment, such as whether Givens made false misrepresentations or omitted to disclose material facts.

### E. Count VI: Legal Malpractice

1. <u>Sufficiency of Allegations</u>

Defendants contend that the Plaintiffs John McLaughlin, LLC, McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., and Jaymac, Inc.("the McLaughlin Plaintiffs") and Plaintiffs Cliff, Lemire, and Roderick ("the Cliff Plaintiffs") failed to allege a cognizable legal malpractice claim. The elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship; (2) negligence in the representation of the plaintiff; (3) that the negligence was a proximate cause of the injuries; and (4) the fact and extent of the injury alleged. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 585-86, 513 N.W.2d 773, 775 (1994); *Coleman v. Gurwin*, 443 Mich. 59, 63, 503 N.W.2d 435, 436

(1993).

Plaintiffs allege:

96.  Defendants Givens and Hyman Lippitt represented and held out to the public that they were equipped, qualified and prepared to represent Plaintiffs McLaughlin and the McLaughlin Companies in matters relating to offshore investments generally, and specifically with respect to Agave.

97.  At all times relevant hereto, Defendants had a duty to provide Plaintiffs with a [sic] qualified and competent attorneys and staff and to render competent advise, representation and assistance in accordance with the standards then prevailing in the community.  Defendants and each of the attorneys providing services to Plaintiffs had the duty to possess that degree of learning and skill that is ordinarily possessed by attorneys practicing in the areas in which Hyman Lippitt represented that it practiced, including in particular the fields of international or offshore tax planning and investment and state, federal and international securities law.

98.  Defendants, at variance with the applicable community standards, were guilty of malpractice and negligence, in recommending to Plaintiffs that they enter into the insurance transactions described in ¶¶51-55 above.

99.  In addition, . . . Hyman Lippitt and Givens:

(i)     failed to perform any "due diligence" or background investigation on Kisor;

(ii)    prepared and authorized the dissemination of subscription documents, including those sent to Plaintiffs, which misrepresented and omitted material facts;

(iii)   supervised and administered a distribution of securities which violated both federal and Michigan law; and

(iv)    prepared and advised the use of a general power of attorney which gave Kisor the power to misappropriate and/or misallocate Agave funds; and

(v)     met with and personally assured Plaintiffs McLaughlin and the McLaughlin Companies that Agave was an appropriate investment . . . .

100.  As alleged above, Hyman Lippitt fraudulently concealed the fact that the

> power of attorney which it had prepared and directed GNT to execute and
> forward to EDF Mann was fatally defective and had in fact permitted Kisor's
> embezzlement and misallocation of funds. . . .

(*Burket* Compl. at ¶¶96-100; *see also Cliff* Compl. at ¶¶86-90).

Consequently, the Court believes that Plaintiffs' Complaints state a cause of action against Defendants for legal malpractice. In addition, Defendants move for summary judgment, contending that no genuine issues of material fact remain because any injury to Plaintiffs was caused by intervening acts of Kisor. However, Defendants' Motion for Summary Judgment shall be denied, because, as explained above, the Court believes that, viewing the facts in the light most favorable to Plaintiffs, genuine issues of material fact remain as to whether Givens' alleged misrepresentations and omissions were the proximate cause of Plaintiffs' financial losses.

2. <u>Timeliness</u>

Defendants contend that Plaintiffs' legal malpractice claim is time barred. The statute of limitations for a legal malpractice claim is measured in two ways. Under the first measure, a claim must be brought within two years after the attorney discontinues serving the plaintiff as to the matters out of which the claims for malpractice arose. MICH. COMP. LAWS ANN. §§ 600.5805(6); 600.5838(1). Alternatively, a malpractice claim against an attorney must be brought within six months after the plaintiff discovers, or should have discovered, the existence of the claim. MICH. COMP. LAWS ANN. § 600.5838(2).

Here, Plaintiffs contend that they discovered the facts giving rise to the existence of a legal malpractice claim in December 2004. (*Burket* Compl. at ¶100; *Cliff* Compl. at ¶90). The McLaughlin Plaintiffs filed their Complaint on May 27, 2005, and the Cliff Plaintiffs

filed their Complaint on June 6, 2005. Therefore, Plaintiffs' legal malpractice claims were timely filed.

### F. Count VII: Breach of Fiduciary Duties

Defendants argue that Plaintiffs' breach of fiduciary duties claims (and negligence claims) fail because they are duplicative of the legal malpractice claim, citing *Adkins v. Annapolis Hospital*, 116 Mich. App. 558, 323 N.W.2d 482 (1982), *Barnard v. Dilley*, 134 Mich. App. 375, 350 N.W.2d 887 (1984), and *Aldred v. O'Hara-Bruce*, 184 Mich. App. 488, 458 N.W.2d 671 (1990). All of these cases stand for the proposition that where a party asserts various claims against a defendant attorney arising out of an attorney-client relationship, the applicable *statute of limitations* depends upon the malpractice action where the same set of facts supports two distinct causes of action. *See Adkins*, 116 Mich. App. at 563, 323 N.W.2d at 485; *Barnard*, 134 Mich. App. at 378, 350 N.W.2d at 887-88; *Aldred*, 184 Mich. App. at 490, N.W.2d at 672-73.

Moreover, in *Prentis Family Foundation v. Barbara Ann Karmanos Cancer Inst*., 266 Mich. App. 39, 47, 698 N.W.2d 900, 908 (2005), the Michigan Court of Appeals explained that breach of fiduciary duty claims are not duplicative of legal malpractice claims:

> The conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice. Damages may be obtained for a breach of fiduciary duty when a "position of influence has been acquired and abused, or when confidence has been reposed and betrayed."

*Id.* (citation omitted).

Therefore, Defendants' motions to dismiss Plaintiffs' breach of fiduciary duties claims pursuant to Rule 12(b)(6) and/or Rule 56 are denied.

### C. Rule 12(f) Motion to Strike

Defendant Givens filed a Motion to Strike Certain Prejudicial, Impertinent, or Scandalous Matter from the Complaints pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides, in pertinent part:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

FED. R. CIV. P. 12(f). The Sixth Circuit has noted that a 12(f) motion to strike is "a drastic remedy to be resorted to only when required for purposes of justice." *Brown v. Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

Defendant Givens asks the Court to strike from the Complaints "[a]ll assertions or innuendos of intentional criminal acts–or reckless or willful violations of civil securities laws." (Br. in Supp. of Mot. to Strike at 18). The allegations contained in Plaintiffs' Complaints, however, are not "obviously false" or "clearly injurious to a party because of the kind of language used." *Pessin v. Keeneland Assoc.*, 45 F.R.D. 10, 13 (E.D. Ky. 1968). Rather, Defendant Givens is essentially claiming that the allegations contained in Plaintiffs' Complaints regarding Givens's alleged involvement are scandalous because they are not true. However, "a motion to strike is not intended to furnish an opportunity for the determination of disputed and substantial questions of law." *County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (citation omitted). Therefore, Defendant Givens's Motion to Strike shall be denied.

Accordingly,

**IT IS ORDERED** that Defendants Hyman Lippitt, P.C., John Does #1 through #20, and Terry Givens's Motion to Dismiss or for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, as set forth below:

**IT IS ORDERED** that the 10b-5 claims by Plaintiffs McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., Jaymac, Inc., Donald Lemire, Thomas Roderick, and William Cliff, with respect to all but the June 2001 $200,000 investment in Agave shares, are **DISMISSED** for lack of standing.

**IT IS FURTHER ORDERED** that Plaintiffs Jack Burket, Linda Burket, Norman Easnor, Susan I. Lindquist as Trustee of the Susan I. Lindquist Trust, and all of the Plaintiffs listed in the *Adams* Complaint's Rule 10b-5 claims against Defendants based on alleged omissions are **DISMISSED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Plaintiffs' claims under MICH. COMP. LAWS ANN. § 451.701, Failure to Register Securities, are **DISMISSED** as untimely. Count II of Plaintiffs' Complaints is **DISMISSED** in its entirety.

**IT IS FURTHER ORDERED** that Plaintiffs McLaughlin Ford, Inc., McLaughlin Enterprises, Inc., C.B.S. Agency, Inc., Jaymac, Inc., Donald Lemire, Thomas Roderick and William Cliff, with respect to all but the June 2001 $200,000 investment in Agave shares, Count III claims under the MUSA are **DISMISSED** for lack of standing.

**IT IS FURTHER ORDERED** that Plaintiffs Jack Burket, Linda Burket, Norman Easnor, Susan I. Lindquist as Trustee of the Susan I. Lindquist Trust, and all of the Plaintiffs

listed in the *Adams* Complaint's Count III claims, pursuant to Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2), to the extent they are based on alleged omissions are **DISMISSED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that with respect to Plaintiffs Jack and Linda Burkets' first investment, Norman Eansor's first investment, and Susan Lindquist's first investment, and Plaintiffs Curtis Callahan, Douglas Chapple, Phillip Church, Ronald Cutler, Carol Cutler, George Dussich, Walter Everett, James and Valerie Felter, Marion Felter, Jillian Giesin, Stephen Gronkiewicz, William Jarvis, Rita LoGrasso, Kathryn P. Mohn Living Trust, Laurence F. Mohn Living Trust, Pamela Munro, Keith Pierce, Pinehurst Investments, Janet Rebone, and Nikolay Tchopev's Count III claims, pursuant to Section 410 of the MUSA, MICH. COMP. LAWS ANN. § 451.810(a)(2), are **DISMISSED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendant Terry Givens's Motion to Strike Certain Prejudicial, Impertinent, or Scandalous Matter from the Complaints is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
James B. Eggenberger, Esq.
Andrew H. Wilson, Esq.
Rodger D. Young, Esq.
T.S. Givens, Esq.

41