UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK BURKETT ET AL.,

    Plaintiff,                          CIVIL ACTION NO. 05-CV-72110-DT

  vs.                                 DISTRICT JUDGE PATRICK J. DUGGAN

HYMAN LIPPITT, P.C.,            MAGISTRATE JUDGE MONA K. MAJZOUB
ET AL.,

    Defendants,
_____

JENNIFER ADAMS, ET AL.,

    Plaintiff,                          CIVIL ACTION NO. 05-CV-72171-DT

  vs.                                 DISTRICT JUDGE PATRICK J. DUGGAN

HYMAN LIPPITT, P.C.,            MAGISTRATE JUDGE MONA K. MAJZOUB
ET AL.,

    Defendants,
_____

WILLIAM CLIFF, ET AL.,

    Plaintiff,                          CIVIL ACTION NO. 05-CV-72221-DT

  vs.                                 DISTRICT JUDGE PATRICK J. DUGGAN

HYMAN LIPPITT, P.C.,            MAGISTRATE JUDGE MONA K. MAJZOUB
ET AL.,

    Defendants,
_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY AND DENYING DEFENDANT'S MOTIONS FOR A PROTECTIVE ORDER

Before the Court are six motions in three closely related securities fraud cases involving

Hyman Lippit, P.C. and its lawyers. In each case, Plaintiffs have filed a motion to compel discovery

from Hyman Lippitt, and Defendant Hyman Lippitt has filed a motion for a protective order. Each of the three motions to compel is substantially identical, as are the three motions for a protective order. All six motions principally address Hyman Lippitt's claims that the attorney-client privilege protects many hundreds of pages of otherwise relevant discovery from disclosure in this case. Defendants maintain that the disputed documents are privileged and therefore protected from disclosure. The motion were referred to the undersigned for hearing and determination pursuant to 28 U.S.C. § (b)(1)(A) by the Honorable Patrick J. Duggan. The parties have fully briefed the motions and presented oral arguments to the Court on May 16, 2006.

The dispute centers on Defendant Hyman Lippitt's responses to Plaintiffs' Requests for Production of Documents. In each case, Defendant identified several hundred pages of documents as relevant but protected by the attorney-client privilege. Plaintiffs argue that the documents are not privileged, as they fall within the crime/fraud exception to the attorney client privilege, and that any applicable privileges have been waived by Defendants' clients. The Court has ordered the disclosure of the disputed discovery documents produced under seal for inspection *in camera,* and has inspected all of the documents.

**BACKGROUND**

Defendant Hyman Lippitt, P.C. is a law firm located in Birmingham, Michigan. Its business portfolio includes an offshore finance group, chaired by Defendant Terry Givens. In 1999, an investment advisor and a Hyman Lippitt client named Keith Mohn began to refer clients to Givens. Defendants Givens and Hyman Lippitt advised other Hyman Lippitt clients to enter into various financial transactions based on insurance programs and policies jointly devised by Givens and Keith Mohn.

**The Formation of Agave and GNT**

In late 1999 or 2000, Defendant Givens met with Mohn, J. Patrick Kisor, and Dennis Drabeck, an associate of Kisor's. During this meeting, Givens told Kisor and Mohn that, for a fee, Hyman Lippitt could create an unregulated investment vehicle for clients of Hyman Lippitt's Offshore Practice Group, which would be operated by Mohn and Kisor.

In February 2000 Defendant Givens traveled to the Cook Islands and allegedly persuaded Puai Wichman and John Keening to establish a Cook Islands trust company named "Global Network Trust" ("GNT"). Plaintiffs allege that Defendant Givens orally directed GNT to form an entity named "Agave Ltd." ("Agave"). (Pls.' Am. Compl. at ¶ 80). Plaintiffs claim that Cook Islands trust companies such as GNT are prohibited from accepting instructions from a person other than a principal previously designated by written agreement. *Id.* Plaintiffs allege that Defendant Givens eventually persuaded Keith Mohn to become GNT's principal, and on September 13, 2000 Mohn and GNT executed a services agreement. (*Id.* at Ex. C). Defendant Givens later persuaded another individual, Pippa Diamond, to serve as GNT's principal, and executed another services agreement to that effect. (*Id.* at Ex. A). Both services agreements provide that GNT's principal was to follow instructions from Defendant Givens and Pat Kisor. (*Id.* at ¶ 84).

Agave was created as a limited liability company with three classes of shares, designated as classes A, B, and C. All voting power was held in class A shares. Agave was created with a single class A shareholder, Pippa Diamond. Hyman Lippitt prepared the documents through which class B and C shares were offered and sold to investors. Many of the purchasers were also Hyman Lippitt clients. While many of the shares offered were allegedly subject to state and federal securities

3

registration laws, Defendants did not register or file notices of exemption from the registration requirements at the time the shares were initially offered.

**Agave's Early Investments**

In August, 2000 money began to flow into an investment fund maintained by GNT for Agave. (*Id.* at ¶ 90). In September, 2000 Defendant Givens asked Puai Wichman to execute a power of attorney agreement for Pat Kisor, giving Kisor the power to trade on Agave's brokerage account. (*Id.* at ¶ 91). Wichman drafted a power of attorney agreement giving Kisor unqualified power over Agave's brokerage account and forwarded it to Defendant Givens for approval. (*Id.*). Defendant Givens approved the agreement. (*Id.*)

Beginning in November 2000, monthly account statements of Agave's investment activity showed that Agave investments were generating impressive returns. By May 2002, Agave had attracted approximately 31 million dollars in investment capital. In accordance with Cook Islands trust company procedure, GNT could only accept instructions from Mohn, Agave's designated principal.

In early 2001, after investors complained that the monthly account statements prepared by GNT were untimely, Defendant Givens reached an agreement with a West Indies trust company, Hanver, Ltd., whereby Hanver would prepare the account statements.

In September 2001, Hanver informed Defendant Givens and Mohn that it suspected that Kisor was supplying incorrect account data . (*Id.* at ¶164). On February 9, 2002, after being pressed to provide financial statements, Kisor confessed his misconduct to Mohn, who in turn, told Givens. (*Id.* at ¶165). On February 10, 2002, Givens directed GNT to terminate Kisor's Power of Attorney and to request EDF Mann to transmit the cash to a bank account in the Cook Islands. (*Id.*). Of the 31

million dollars invested, Kisor had embezzled 5 million dollars, 15 million dollars had been diverted to investments outside of the investment strategy presented to investors, and approximately 10 million dollars remained in cash. (*Id.* at ¶ 166). Plaintiffs allege that Defendants became aware of this situation by February 2002. (*Id.* at ¶ 167). Defendant directed Hanver not to disclose the troubling revelations concerning Agave's investments to its investors. (*Id.* at ¶ 174).

In February and March 2002, Defendants created a new investment vehicle, Genesis, LLC, a Michigan limited liability company, and directed Hanver and GNT to issue Genesis shares only to Agave's U.S. Investors. (*Id.*). Givens directed GNT to have Agave transfer the cash in its Cook Islands account to a Genesis account in Michigan. (*Id.*). Genesis then loaned these funds to Jason Malkin, who used the funds to purchase a seat on the Chicago Board of Options Exchange ("CBOE") and trade the loaned funds. (*Id.*).

In June 2001, through the efforts of Defendants Givens and Hyman Lippitt, Agave acquired a seat on the CBOE in the name of Agave employee, Gil Howard. (*Id.* at ¶164). The arrangement circumvented the CBOE's prohibition on seat ownership by pools of investors. Plaintiffs allege that Defendants formed and operated Genesis to conceal Agave's losses and their role in causing them.

**Defendants' Alleged Attempts to Conceal Their Roles**

In August 2002, having caught wind of Kisor's activities, the SEC subpoenaed Mohn. Defendants then allegedly attempted to fix or conceal the legal deficiencies in the formation, offering, sale, and operation of GNT, Agave, and Genesis. On November 22, 2002 the SEC filed suit against Mohn in this Court alleging that the issuance of Agave shares violated the federal securities registration requirements and anti-fraud laws. SEC v. Mohn, No. 02-74634.

Defendant Hyman Lippitt agreed to defend Mohn in that action. Plaintiffs contend that Defendant Hyman Lippitt attempted to conceal its role in forming and operating Agave and Genesis during its defense of Mohn by, among other things: (1) advising Mohn not assert the advice of counsel defense; (2) advising him to enter into an agreement whereby he would waive the advice of counsel defense if the SEC would not seek the production of allegedly privileged documents that would reveal Defendants' role in the transactions; (3) seeking the appointment of a receiver who it thought would not investigate claims against Defendants; and (4) advising Mohn to settle after finding emails that would have incriminated Defendant Givens.

**PLAINTIFFS' REQUESTS**

Plaintiffs' complaint alleges that Defendants violated state and federal securities fraud and securities registration requirements.

On February 16, 2006 Plaintiffs served Defendant Hyman Lippitt with Requests for Production of Documents. Hyman Lippitt served responses on March 22, 2006, but withheld many documents on the basis of a purported attorney-client privilege. Hyman Lippitt identified these documents in a privilege log, and the documents have been produced for *in camera* inspection pursuant to an Order of this Court.

**DISCOVERY STANDARDS**

Under FED. R. CIV. P. 26(b)(1), discovery may be had "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . if the information sought appears reasonably calculated to the discovery of admissible evidence." The determination of "relevance" is within the court's sound discretion. *See e.g.*, *Watson v. Lowcountry Red Cross*, 974 F.2d 482 (4th Cir. 1992). In applying the discovery rules, "relevance" should be broadly and

liberally construed. *Herbert v. Lando*, 441 U.S. 153 (1979); *Hickman v. Taylor*, 329 U.S. 495 (1947). "The requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." *Miller v. Pancucci*, 141 F.R.D. 292, 294 (C.D. Cal. 1992).

The Sixth Circuit defines the elements of the attorney-client privilege as follows: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communication relating to that purpose (4) made in confidence (5) by the client (6) are at his direction permanently protected (7) from disclosure by himself or the legal adviser (8) unless the protection is waived. *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998).

A communication between two corporate employees is protected from disclosure by the attorney-client privilege only if it was made for the "primary purpose" of obtaining legal advice. *See e.g., In Re OM Group Securities Litigation*, 2005 WL 602346, at *5 (N.D. Ohio 2005); *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F.Supp. 679, 685-86 (W.D. Mich. 1996); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988).

The Court has completed its *in camera* review of the documents identified in the privilege log. For the majority of the documents in which Defendants claim a privilege, the privilege runs to an entity under the receivership imposed in *SEC v. Mohn*. The receivership in *SEC v. Mohn* was imposed in favor of former Agave shareholders, many of whom are Plaintiffs in the instant action. The receiver has a fiduciary duty to run the entities under receivership for the benefit of the Plaintiffs who are former Agave shareholders. Since Plaintiffs may recover some of the money Agave lost from Defendants, it appears that the receiver has a fiduciary duty to waive any claims of privilege between the entities controlled by the receiver and Hyman Lippitt. At oral argument, Plaintiffs'

attorney noted that Plaintiffs' attempts to acquire a waiver of the attorney client privilege from the receiver have been unsuccessful.

The Court's *in camera* review reveals that Defendants helped control and operate Agave, GNT, and the other investment entities in this case (except the Hanver entitites), and that their role was not limited to the mere provision of legal advice. To the extent that Defendants were giving advice rather than direction, it is this Court's conclusion that in most instances, Defendants' advice was business advice, not legal advice. The Court is not persuaded that the privilege ever attached to majority of the communications that Defendants claim are currently protected from disclosure.

Defendants claims of privilege suffer another, more serious defect. The attorney client privilege does not extend to communications made for the purpose of giving advice to aid in the commission of a crime or fraud. *United States v. Zolin*, 491 U.S. 554, 563 (1989). The crime-fraud exception to the attorney-client privilege "is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v. Paasche*, 207 Mich. App. 698 (1994). To establish that an otherwise privileged communication falls within the crime fraud exception, the proponent of the exception has the burden of proving (1) that there is probable cause to believe that a crime or fraud has been attempted or committed; and (2) that there is probable cause to believe that the communication at issue was made in furtherance of it. *Zolin*, 491 U.S. at 563, *Sackman v. Ligget Group, Inc.*, 920 F. Supp. 357 (E.D.N.Y. 1996).

Either party may request that the communication be subject to review *in camera* to determine whether the crime-fraud exception applies. *Zolin*, at 574. A district court may not conduct review *in camera* at the behest of the proponent of the exception unless the proponent presents evidence

sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability. *Id.* As noted above, the Court has already ordered *in camera* production, and has inspected the documents. Plaintiffs have shown through extrinsic evidence that there is probable cause to believe that the original arrangement of GNT and Agave was fraudulent, and that Defendants at least aided in the execution of the fraud.

Plaintiffs have shown that at least one purported "attorney-client relationship" claimed by Hyman Lippitt did not exist. Exhibit E to Plaintiff's motion is the declaration of Robin Cotterell, who identifies herself as an employee of Hanver Corporate Services. Ms. Cotterell states that Hanver provided administrative services to Hyman Lippitt, but that Hyman Lippitt never represented Hanver in any way. Defendants argue that they dealt with Hanver Ltd., not Hanver Corporate Services. They argue that Ms. Cotterell's declaration is not a waiver of an attorney-client privilege held by Hanver, Ltd. However, Defendants dealt with Hanver, Ltd. and the other Hanver entities through Robin Cotterell. Defendants have produce no evidence that they ever gave legal advice to any Hanver entity. Based on the evidence presented, the Court concludes that Hyman Lippitt never represented any of the West Indies Hanver entities in connection with Agave, GNT, or Genesis.

*In camera* review leads the Court to conclude that there is probable cause to believe that Defendants' alleged representations of Keith Mohn, Patrick Kisor, Agave, GNT were undertaken to further one or more acts of securities fraud. Indeed, some documents suggest that Defendants were active participants in the undertaking, and were more than mere legal advisors. There is also probable cause to believe that Defendants' subsequent "representations" of Genesis, L.L.C., Patrick Kisor, PDK, and Keith Mohn were undertaken to disguise their potential liability stemming from its relationship with Agave.

Defendants' claims of privilege as to Agave, GNT, Genesis, Keith Mohn, Keith Mohn Asset Management, Patrick Kisor, and PDK are all subject to the crime fraud exception. However, not all of Defendants' privilege claims fail. Some of the documents listed in the privilege log were generated in connection with Defendants' representations of offshore trust company, insurance, and investment structures that are not the subject of this case. Hyman Lippitt claims that these other entities were created for other Hyman Lippitt clients, and the privilege attaches to them. The crime fraud exception does not apply to these documents.[1]

For the reasons stated above, Plaintiff's Motion to Compel is **GRANTED IN PART and DENIED IN PART**. Hyman Lippitt will produce to Plaintiffs those documents listed in the privilege log, other than those excepted by footnote one, below, on or before June 7, 2006.

**Defendant's Motion for Protective Order**

Defendant's Motion for Judicial Determination Concerning Disclosure of Former Cleints' Confidences and Secrets and Protective Order seeks to compel a Court order preventing the disclosure of allegedly privileged documents responsive to Plaintiff's discovery request until such time as Hyman Lippitt waives the privilege in order to use the documents in its own defense. Hyman Lippitt claims that it cannot disclose the documents, except to use them in its own defense, without a judicial determination that the documents must be disclosed. The Court has ordered that a majority

---

[1] Specifically, Hyman Lippitt appears to have a valid claim of privilege with respect to the following documents listed in the privilege log: the documents listed as numbers 1-4 in Response to Plaintiff's Request for Production of Documents #4, and those portions of the document listed as number 1 in response to Plaintiff's Request for Production of Documents # 11 that specifically refer to clients other than Genesis, Patrick Kisor, PDK, GNT, Keith Mohn, Keith Mohn Asset Management, or Agave.

of the allegedly privileged documents at issue be produced to Plaintiffs, and has ordered that other documents listed on Defendants' privilege log are protected from disclosure by the attorney-client privilege.

Defendants also request that any pleadings containing confidences or secrets of former Hyman Lippitt clients be filed under seal. Functionally, this is a request to subject nearly all subsequent pleadings in this case to a cumbersome filing procedure, and to shelter the central facts of this case from public view. Because the persons and entities Hyman Lippitt seeks to shield are under a receivership imposed for the benefit of the Plaintiffs, are not longer functional, or have waived the attorney-client privilege, such an order would not meaningfully benefit the clients Hyman Lippitt claims to be trying to protect. It would be an inappropriate application of this Court's discretion under Fed. R. Civ. P. 26(c) to enter a protective order requiring pleadings referring to Hyman Lippitt's communications be filed under seal. Defendant's Motion is therefore **DENIED**.

**IT IS SO ORDERED.**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: May 24, 2006                             s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: May 24, 2006                             s/ Lisa C. Bartlett
                                                Courtroom Deputy

11